# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

WILLIAM C. PETREE,                         )
                                           )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )        No.  06-CV-96-SAJ
                                           )
MICHAEL J. ASTRUE,                         )
Commissioner of Social Security            )
Administration,[1]                         )
                                           )
                    Defendant.             )

## OPINION AND ORDER[2]

      Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[3]  Plaintiff asserts that the Commissioner erred because (1) the ALJ failed to perform a proper evaluation at Steps Two and Three of the sequential evaluation process; (2) the ALJ failed to properly evaluate the treating physician's opinion; (3) the ALJ failed to properly evaluate Plaintiff's credibility; and (4) the ALJ failed to perform a proper evaluation at Steps Four and Five of the sequential evaluation process.  For the reasons discussed below, the Court affirms the Commissioner's decision.

## 1. FACTUAL AND PROCEDURAL HISTORY

      The Court finds the statement of facts contained in the ALJ's decision to be

---

[1]   Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 42 U.S.C. § 405(g) of the Social Security Act.

[2]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[3]   Administrative Law Judge Richard J. Kallsnick (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated December 6, 2004.  [R. at 18 - 25].  Plaintiff appealed the decision by the ALJ to the Appeals Council.  The Appeals Council declined Plaintiff's request for review on December 20, 2005.  [R. at 5].

substantiated by the record.  Plaintiff, William C. Petree, was born April 7, 1974 [R. at 49].

Plaintiff protectively filed for social security benefits by application dated August 29, 2002.

[R. at 48, 262].  Plaintiff alleges that he became disabled on May 17, 2002 due to bipolar

and manic depression.  [R. 67].    Plaintiff's claim was denied, and Plaintiff requested a

hearing before the ALJ. [R. 35-37, 41-43].  The ALJ rendered a decision on December 6,

2004 concluding that Plaintiff was not disabled within the meaning of the Social Security

Act. [R. 18].  Plaintiff now appeals the ALJ decision.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social

security claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Disability under the Social Security

Act is defined as the

> inability to engage in any substantial gainful activity by reason
> of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work in the
> national economy. . . .

42 U.S.C. § 423(d)(2)(A).[4]

---

[4]    Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1521, 416.972.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[5/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §  405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

---

("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

[5/]   Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).   The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ determined at Step Two that Plaintiff's bipolar disorder was a severe impairment. [R. 19].  The ALJ found, however, that Plaintiff's severe impairment did not meet or equal a Listing at Step Three of the sequential evaluation. [R. 19].   This determination was supported by medical evidence and medical source opinions given by medical consultants of the State agency and Plaintiff's treating physician. [R. 21]. Additionally, after viewing all of the evidence of record, the ALJ considered some of Plaintiff's allegations to be lacking credibility.

At Step Four, the ALJ concluded that Plaintiff could perform the full range of medium, light, sedentary exertional work, with certain limitations. [R. 21].   The ALJ determined that Plaintiff's residual functional capacity permitted Plaintiff to perform much of Plaintiff's past relevant work including work as a stocker, janitor, and house cleaner – as generally performed in the national economy. [R.  23].

Although not technically required to advance to Step Five of the sequential evaluation process upon a finding of the Plaintiff's ability to do past relevant work, the ALJ nevertheless applied the remaining step of the evaluation process in the interest of administrative efficiency. [R. 23].  The ALJ posed a hypothetical question to the vocational expert containing all of pertinent information (age, education, work history, impairment, and residual functional capacity) relating to the Plaintiff. [R. 23].  Based on the vocational

expert's testimony, the ALJ concluded that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy. [R. 23].

## 4.  REVIEW

### A.  Proper Evaluation by ALJ at Steps Two and Three

The Court finds that the ALJ conducted a proper evaluation at Steps Two and Three of the sequential evaluation process.  At issue is whether the ALJ erred in failing to discuss Plaintiff's alleged panic and social anxiety disorders at Steps Two and Three.

At Step Two of the sequential evaluation process, a preliminary determination is made as to whether the claimant has "any impairment or combination of impairments which significantly limits . . . physical or mental ability to do basic work activities. . . . "  20 C.F.R. §§ 404.1520(c), 416.920(c).  The Commissioner's determination at Step Two is based on medical factors alone.  Vocational factors such as the claimant's age, education, or work experience are not considered in determining whether a severe impairment exists.  20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521-23, 416.921-23.  Step Two is a preliminary hurdle, and the Plaintiff's burden on the severity issue is *de minimus*.  *Williams*, 844 F.2d at 751.  In other words, Step Two "is an administrative convenience [used] to screen out claims that are 'totally groundless' solely from a medical standpoint."  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) (quoting *Farris v. Secretary of HHS*, 773 F.2d 85, 89 n. 1 (6th Cir. 1985)).

In this case, the ALJ determined at Step Two of the sequential evaluation process that Plaintiff's bipolar disorder was a severe impairment as defined by the Social Security regulations.  The ALJ did not address Plaintiff's alleged anxiety related disorders.   After a review of the record, however, Plaintiff clearly has met his initial burden of producing

medically determinable evidence sufficient to establish a *de minimus* showing that his symptoms relating to panic disorder and social anxiety disorder "significantly [limit] his ability to do basic work activities." *Williams*, 844 F.2d at 751, [R. 101-103, 105, 106, 137, 165, 174, 180, 252]. Therefore, the Court holds that the ALJ's failure at Step Two to find the Plaintiff's alleged anxiety related disorders as severe was error. As discussed below, the Court finds this error to be harmless.

At Step Three of the sequential evaluation process, a claimant's impairment is compared to the Listings found under 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the impairment is equal or medically equivalent to an impairment in the Listings, the claimant is presumed disabled. A plaintiff has the burden of proving that a Listing has been equaled or met. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams*, 844 F.2d at 750-51. In his decision, the ALJ is "required to discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996).[6/]

In *Clifton*, the ALJ did not discuss the evidence or his reasons for determining that the claimant was not disabled at Step Three, or even identify the relevant listing. The ALJ merely stated a summary conclusion that the claimant's impairments did not meet or equal any listed impairment. The Tenth Circuit Court of Appeals held that such a bare conclusion

---

[6/]   The Court notes, however, that while *Clifton* stands for the proposition that a terse step three analysis by the ALJ requires reversal, there is authority holding otherwise. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (rejecting a reading of *Clifton* which would require "purely formalistic remands unjustifiably prolonging administrative proceedings" if the "ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Id.*); *see also Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) (the requirement under *Clifton* for the ALJ to discuss evidence and explain why a listed impairment is not met is not followed by the 8th Circuit. The 8th Circuit instead consistently holds "that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Id.*).

was beyond any meaningful judicial review.  *Clifton*, 79 F.3d at 1009.

In particular, the Tenth Circuit held as follows:

> Under the Social Security Act,
>
> > [t]he Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter.  Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.
>
> 42 U.S.C. 405(b)(1). . . .
>
> > This statutory requirement fits hand in glove with our standard of review.  By congressional design, as well as by administrative due process standards, this court should not properly engage in the task of weighing evidence in cases before the Social Security Administration.  42 U.S.C. 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). . . .  Rather, we review the  [Commissioner's] decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards. . .
>
> > In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion.  The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. . . .  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. . . . Therefore, the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence at step three.

*Clifton*, 79 F.3d at 1009-10 (internal case citations omitted).

In this case, the ALJ noted that Plaintiff did not "meet or equal the severity of any impairment listed in Appendix 1 to Subpart P, Regulations No. 4."  In making his determination, the ALJ only referenced Listing 12.04.  Since the ALJ failed to recognize Plaintiff's anxiety related disorders as a severe impairment in Step Two, it follows that the ALJ did not provide additional discussion of why Plaintiff did not meet a Listing under 12.06. Concluding above that the ALJ failed in not identifying Plaintiff's anxiety related disorders as severe in Step Two, the Court must assess whether this failure negatively affected the sequential evaluation process at Step Three.  The Court concludes that it did not, as discussed below.

Plaintiff asserts that it was error in Step Three for the ALJ not to discuss the paragraph A factors of Listing 12.04.  The Court disagrees.  In the decision, the ALJ found in Step Two that Plaintiff had bipolar disorder that rose to the level of a severe impairment. Bipolar disorder, under 12.04(A)(3), satisfies the paragraph A requirement of Listing 12.04. In order to meet or equal a listed impairment under 12.04, the Plaintiff must satisfy the requirements of *both* paragraph A and paragraph B (or in the alternative, must satisfy *both* paragraph A and paragraph C[7]).  Therefore, it is implicit in the ALJ's Step Two finding and his discussion of 12.04 paragraph B requirements that the ALJ concluded that Plaintiff's bipolar disorder satisfied the paragraph A requirement under 12.04(A)(3).  20 C.F.R. Pt. 404, Subpt P, App. 1, 12.04(A)(3).

Plaintiff also claims that it was error in Step Three for the ALJ not to properly detail

---

[7]   The ALJ found that there was no evidence to substantiate the requirements of paragraph C.  There was no objection raised by the parties with respect to this determination, so the Court need not address paragraph C.

the four domains of functioning under paragraph B for the mental listing of 12.04.  Plaintiff claims further error by ALJ in completely ignoring the four domains of functioning under paragraph B for the mental listing of 12.06.  Again, the Court disagrees.  In order to satisfy the requirements under paragraph B (for *both* Listings 12.04 and 12.06), the Plaintiff must show at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  20 C.F.R. Pt. 404, Subpt P, App. 1, 12.04(B)(1-4), 12.06(B)(1-4).

First, the ALJ found that Plaintiff was only moderately restricted in his activities of daily living.  The ALJ points to statements in the record written by the Plaintiff describing grooming, meal preparation, hobbies, shopping, and household chores as supporting evidence. [R. 76-87].  The ALJ's finding here is further supported by medical source opinions from medical consultants of the State agency, also concluding that the Plaintiff is moderately restricted in his activities of daily living. [R. 119, 130 181-184, 195]. Therefore, there is substantial evidence in the record supporting the ALJ's determination that Plaintiff is moderately restricted in his activities of daily living.  Moderate restriction in activities of daily living does not rise to the level of marked restriction, and thus fails to satisfy paragraph B(1) for both Listings 12.04 and 12.06.

Second, the ALJ found that Plaintiff was only moderately limited in social functioning. The ALJ acknowledged that Plaintiff has problems relating to others and tends to avoids crowds. [R. 76, 82].  Other evidence, however, demonstrated that while Plaintiff did not relate effectively to the general public, he was able to function socially with a small number of people familiar to him.  For example, there is evidence that Plaintiff would engage in

social activities with family and friends two or three times per week for one to four hours per visit. [R. 80, 86].  The ALJ's finding here is further supported by medical source opinions from medical consultants of the State agency, also concluding that the Plaintiff is moderately limited in social functioning.  [R. 119, 130 181-184, 195].  Moderate limitation in social functioning does not rise to the level of a marked limitation, and thus fails to satisfy paragraph B(2) for both Listings 12.04 and 12.06.

Third, the ALJ found that Plaintiff was only moderately limited in his concentration, persistence, and pace.  To support this determination, the ALJ refers to (1) Plaintiff's daily activities [R. 76-87], (2) testimony regarding his ability to read for 30 minute periods before losing concentration [R. 280-281], and (3) past and current hobbies such as playing guitar, writing, and creating collages [R. 280-281].  The ALJ acknowledges Plaintiff's testimony of not being able to complete projects. [R. 20].  The ALJ also points to evidence of the Plaintiff caring for a young child. [R. 76].  The ALJ's finding here is further supported by medical source opinions from medical consultants of the State agency, also concluding that the Plaintiff is moderately limited in social functioning.  [R. 119, 130 181-184, 195].  Moderate limitation in his concentration, persistence, and pace does not rise to the level of a marked limitation, and thus fails to satisfy paragraph B(3) for both Listings 12.04 and 12.06.

Fourth, the ALJ summarily states that "[t]here are no episodes of decompensation evidenced in the record for the period under consideration." [R. 20].  The Court finds it troublesome that while relying on the medical source opinions from medical consultants of the State agency for the first three domains of paragraph B discussed supra, the ALJ inexplicably fails to rely on the same opinions with respect to episodes of decompensation. The medical consultants' reports each show a clear indication of "one or two" episodes of

decompensation, each of extended duration. [R. 130, 195].  Therefore, the ALJ did not properly discuss the paragraph B listing requirement for episodes of decompensation.

In order to satisfy the paragraph B requirement here, the Plaintiff needed to show "repeated episodes of decompensation, each of extended duration," which is defined as "three episodes within 1 year, or an average of once every four months."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(C)(4).  Plaintiff claims four episodes of decompensation: (1) hospitalization in 1993 [R. 149, 208-209], (2) hospitalization in 2000 [R. 101-110, 236], (3) termination from employment on May 17, 2002 [R. 111, 144, 148, 152, 160, 179], and (4) crisis center evaluation in July 2002 [R. 136-161].  Yet even if all of these episodes claimed by the Plaintiff satisfied the definition for episodes of decompensation under 12.00(C)(4), they would not meet the definition for "repeated episodes of decompensation, each of extended duration."  Consequently, the ALJ's conclusory statement finding no episodes of decompensation sufficient to satisfy the paragraph B requirement is supported by substantial evidence in the record, and is not overwhelmed by any evidence to the contrary.


Furthermore, assuming arguendo that Plaintiff properly established the paragraph B listing requirement for episodes of decompensation, it would not alter the end result. Plaintiff needs to meet requirements for at least two of the four domains of functioning. Here, there is substantial evidence in the record to support the ALJ's determination that the first three domains have not been satisfied by the Plaintiff.  Therefore, a successful showing of episodes of decompensation here would have no bearing on the end result.

In concluding above that the ALJ failed in not identifying Plaintiff's anxiety related disorders as severe in Step Two, the Court must now assess whether this failure requires

reversal.  The Court must also determine what negative effects, if any, this error at Step

Two had on the sequential evaluation process at Step Three.

The Court finds the error at Step Two to be harmless.

> [W]e apply harmless error analysis cautiously in the administrative review
> setting.  But . . . harmless error analysis "nevertheless may be appropriate
> to supply a missing dispositive finding . . . where, based on material the ALJ
> did at least consider . . . we could confidently say that no reasonable
> administrative factfinder, following the correct analysis, could have resolved
> the factual matter in any other way."

*Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (quoting *Allen v. Barnhart*,
357 F.3d 1140, 1145 (10th Cir. 2004)).

Step Two of the sequential evaluation process acts as an administrative gatekeeper.  If the

claimant cannot make a *de minimus* showing of *any* severe impairment, the evaluation

process stops and the claimant is not disabled under the Social Security Act.  Here, the ALJ

found at Step Two that Plaintiff's bipolar disorder was severe, thus satisfying the Step Two

threshold, and allowing the Plaintiff's claim to proceed to other steps in the evaluation

process.

Plaintiff asserts that the ALJ's error at Step Two is reflected throughout the

remainder of the decision.  The Court disagrees.  It is true that the ALJ's failure in not

identifying Plaintiff's anxiety related disorders as severe under Step Two resulted in no

discussion to determine whether those anxiety related disorders met or equaled a Listing

12.06 impairment under Step Three.  This failure, however, did not have a negative impact

on the Step Three analysis because the requirements for the domains of functioning under

paragraph B in Listing 12.04 (which the ALJ did address) is identical to the requirements

for the domains of functioning under paragraph B in Listing 12.06.  The Plaintiff did not

satisfy the requirements under paragraph B.  Therefore, Plaintiff's anxiety related

impairments would not have met or equaled a Listing 12.06 impairment.

As a result of the foregoing discussion, the Court concludes that the ALJ's determination at Step Three of the sequential evaluation process that the Plaintiff does not have an impairment that meets or equals a listed impairment is proper because it contains adequate reasoning and is supported by substantial evidence.

### B.  Medical Opinion of the Treating Physician Supports ALJ's Finding

The Court concludes that the treating physician's medical opinion is consistent with the ALJ's decision.  The Court also finds that the ALJ relied upon the treating physician's opinion in rendering his decision.  At issue is whether the ALJ failed to properly evaluate the treating physician's opinion.  First, the Plaintiff asserts that the treating physician's report relied upon by the ALJ was ambiguous, and as such, the ALJ was bound to recontact the treating physician to gain sufficient clarity regarding whether Plaintiff has the overall ability to perform sustained substantial gainful activity.  Under the Social Security Act, "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques" additional information is needed to reach a decision.   20 C.F.R. §§ 404.1512(e), 416.912(e).  To obtain the necessary information, the ALJ "will first recontact [the] treating physician . . . to determine whether the additional information . . . is readily available."  20 C.F.R. §§ 404.1512(e)(1), 416.912(e).   Here, the treating physician's report clearly discusses the Plaintiff's limitations, including "his response to work pressure, supervision, and coworkers" as being below average on September 23, 2002. [R. 141].  The report also notes that Plaintiff was experiencing reduced thinking and concentration, but the treating

physician expected the medication to "level out moods, decrease depression, and improve the ability to think." [R. 141].  Importantly, the report clearly states that "he *can* carry out simple instructions." [R. 141 (emphasis added)].  Therefore, the report is not ambiguous, and the ALJ was not bound to recontact the treating physician for additional information or further clarification.

The Plaintiff also argues that it was error for the ALJ not to expressly state whether or not the treating physician's opinion was due controlling weight.  Under the Commissioner's regulations concerning the evaluation of opinion evidence, the Commissioner is to "evaluate every medical opinion" received and will "consider all of the following factors in deciding what weight" is to be given to any medical opinion: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors.  20 C.F.R. §§ 404.1527(d), 416.927(d).  An opinion from a treating source will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."   20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If the ALJ concludes that the treating physician's opinion is not entitled to controlling weight, the inquiry does not end.  The ALJ must then evaluate whether the treating source medical opinion is entitled to deference and the ALJ must weigh the treating opinion using all of the factors provided in § 404.1527.  *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (ALJ must consider specific factors in determining what weight to give a medical opinion).  The Commissioner's regulations also note that the Commissioner "will always give good

reasons in our notice of determination or decision for the weight we give [to the] treating source's opinion."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A *de minimus* violation of § 1527(d)(2), however, may qualify as harmless error. *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  Under the facts contained in *Wilson*, the court refused to decide whether a *de minimus* violation of the § 1527(d)(2) procedural requirement may qualify as harmless error, but provided the following situations where harmless error may apply: (1) "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) if "the Commissioner has met the goal of § 1527(d)(2) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation."  *Id.* at 547.  Where the second example applies, the *Wilson* court also stated that "it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."  *Id.*

In this case, the ALJ adopted the treating physician's opinion to determine Plaintiff's residual functional capacity (RFC). [R. 21].  The ALJ's determination that Plaintiff "remains able to perform simple and some more complex tasks" was also supported by the medical source opinions by the medical consultants of the State agency. [R. 21].  The ALJ's findings with respect to Plaintiff's mental impairments adequately addressed the treating physician's opinion, and the opinions from the medical consultants were also consistent with the treating source opinion.  Therefore, the Court concludes that the ALJ failed to adequately explain the weight given to the treating physician's opinion.  This failure violates the letter

of the Commissioner's regulations under 20 C.F.R. §§ 404.1527(d)(2), and 416.927(d)(2). The ALJ's *de minimus* violation of the Commissioner's procedural regulations is harmless, however, because the ALJ adopted the treating physician's opinion and made findings consistent with the treating physician's opinion.

### C.  ALJ's Evaluation of Plaintiff's Credibility was Proper

The Court concludes the ALJ relied upon substantial evidence in finding that Plaintiff's allegations were "not totally credible when considered in light of all the evidence of record." [R. 22].  Plaintiff is challenging the ALJ's credibility findings on the ground that they did not satisfy the requirement that they "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston*, 838 F.2d 1125, 1133 (10th Cir. 1988)). In *Kepler*, the Tenth Circuit determined that an ALJ must discuss a Plaintiff's subjective complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions.  *Kepler*, 68 F.3d at 390-91; *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1995); *see also* 20 C.F.R. §§ 404.1527, 416.927.  Also in *Kepler*, the court expressly stated that the ALJ should consider factors[8] in evaluating subjective allegations of pain.  *Kepler*, 68 F.3d at 390.  This type of evaluation "ultimately and necessarily turns on credibility." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (discussing *Kepler*).  The court in *White v. Barnhart* further states:

[w]hile we have insisted on objectively reasonable explanation over mere

---

[8]    Those factors are: "(1) whether the objective medical evidence establishes a pain-producing impairment; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling."  *Kepler*, 68 F.3d at 390.

-- 16 --

intuition, we have not reduced credibility evaluations to formulaic expressions: "*Kepler* does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."

*Id.* at 909 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

In this case, the ALJ made two specific findings relating to Plaintiff's credibility. First, the ALJ noted that Plaintiff's assertion claiming an inability to work due to his disability was inconsistent with (1) his work history (having worked consistently since 1993 when his mental impairments began until his termination in May of 2002), and (2) his willingness and apparent desire to seek other work which demonstrates a belief in being able to perform such work. [R. at 22].

Second, the ALJ points to Plaintiff's activities of daily living in support of the conclusion that Plaintiff remains able to perform at least simple mental tasks despite his severe impairment. [R. 76-87]. The ALJ also noted Plaintiff's acceptance of responsibility for the care of a young child during the period of his alleged disability. [R. 76, 82]. The ALJ found this evidence to be not entirely consistent with Plaintiff's assertion of being incapable of performing significant mental work-related activities. [R. 22].

A complete review of the record establishes adequate support for the ALJ's finding that Plaintiff's allegations were "not totally credible." [R. 22]. Since substantial evidence exists in the record of this case to support of the ALJ's credibility finding, it will be given great deference by this Court and will not be disturbed. *See Kepler*, 68 F.3d at 391; *Hamilton v. Secretary of Health & Human Services of U.S.*, 961 F.2d 1495, 1499 (10th Cir. 1992) ("[c]redibility is the sole province of the ALJ." *Id.*).

The ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more social

security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.  As a result, the ALJ's credibility findings warrant particular deference.  We will not upset those findings here.

*White*, 287 F.3d at 910.

Therefore, the Court holds that the ALJ's credibility determination was proper.

## D.  Proper Evaluation by ALJ at Step Four

The Court finds that the ALJ conducted a proper evaluation at Step Four of the sequential evaluation process.  At issue is (1) whether the ALJ failed to properly consider the global assessment of functioning (GAF) scores and (2) whether the ALJ ignored the vocational expert's testimony conceding that an individual with moderate limitations of concentration, persistence, or pace might not be able to keep a job.

At Step Four of the sequential evaluation process, the ALJ must determine if the severe impairment prevents the claimant from doing past relevant work.  If a claimant can do his past relevant work, the claimant will be declared not disabled at Step Four, the sequential evaluation terminates, and there is no need to proceed to Step Five.  20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 404.1560, 416.920(a)(4)(iv), (f), 416.960.  Past relevant work is defined as work which claimant has performed within the past 15 years of the alleged onset date of the disability.  20 C.F.R. §§ 404.1565, 416.965.

In this case the ALJ concluded that Plaintiff is able to perform past relevant work, including work as a stocker, janitor, and house cleaner as generally performed in the national economy. [R. 23, 296].  The claimant had additional past work experience as a habilitation specialist and as a security guard. [R. 296].  Based on the mental limitations present in Plaintiff's residual functional capacity (RFC), however, the ALJ agreed with the

vocational expert that work as a habilitation training specialist and as a security guard could not be performed by the Plaintiff. [R. 295-96].   The ALJ reasoned that since Plaintiff remains able to meet the physical and mental demands of the stocker, janitor, and house cleaning jobs mentioned above, that he is able to do past relevant work.

Plaintiff argues that the ALJ failed to adequately consider the global assessment of functioning (GAF) scores demonstrated in the record.   Plaintiff's medical assessments in January 2002 and January 2003 both indicate a GAF of 43. [R. 21, 137, 165].   A GAF score between 41-50 indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning."   *Camp v. Barnhart*, 103 Fed. Appx. 352, 354 (10th Cir. 2004) (quoting *American Psychiatric Assoc.*, *Diagnostic and Statistical Manual or Mental Disorders* 32 (4th ed. 2000)).   In this case, the vocational expert testified that "a person with a GAF of 43 couldn't function in the workplace." [R. 301].   Interestingly, less than a month before the January 2002 assessment, Plaintiff was given a GAF score of 55-60 during a medical evaluation on December 11, 2001. [R. 116].

GAF scores, standing alone, "are not considered absolute determiners of disability." *Heinritz v. Barnhart*, 191 Fed. Appx. 718, 722 (10th Cir. 2006).   Unless there is evidence that Plaintiff's GAF score of 43 impaired his ability to work, the score does not establish an impairment.   *Camp*, 130 Fed. Appx. at 354; *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (holding "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the ALJ's accuracy.   Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." *Id.*).   Here, the ALJ expressly noted the GAF scores of 43 stating that "[t]hese various assessments were considered in light of the opinions discussed below, which more clearly

address the claimant's ability to perform specific work-related activities." [R. 21]. Additionally, the vocational expert's testimony did not provide specific evidence relating to Plaintiff, but instead was a generalized statement that "a person with a GAF of 43 couldn't function in the workplace." [R. 301].   Therefore, the Court concludes that it was not improper for the ALJ to weigh Plaintiff's GAF score of 43 with other medical source opinions when determining the Plaintiff's RFC.

Plaintiff also asserts that it was error for the ALJ to ignore the vocational expert's testimony conceding that an individual with moderate limitations of concentration, persistence, or pace might not be able to keep a job.   The Court disagrees.   During the testimony in question, the vocational expert first testified that moderate functional limitations in (1) activities of daily living, (2) social functioning, and (3) maintaining concentration, persistence and pace, would limit Plaintiff to "simple, repetitive unskilled work but that didn't involve working around the public." [R. 299].   The attorney then followed up with the following:

Q: Okay, what about the restrictions to daily living and social functioning and concentration, persistence and pace, though? [R. 299].

VE: Well, it would still be moderate.  So I don't know that it has. [R. 300].

Q: Would the combination of the three together have any affect on his ability to maintain work? [R. 300].

VE: Well, *maybe* the difficulties of maintaining concentration, persistence and pace *might* cause him to lose jobs. [R. 300 (emphasis added)].

When placed in context, the Court concludes that the above statement from the vocational expert does not suggest that Plaintiff is unable to perform past relevant work.

The Court further concludes that the hypothetical posed to the vocational expert was substantiated by the record and properly characterized the limitations of Plaintiff's impairments. [R. 295-297].  The vocational expert testified that Plaintiff could perform past relevant work and other similar work that exists in the national economy. [R. 296-298]. Therefore, the Court finds substantial evidence in the record to conclude that Plaintiff is able to perform past relevant work.  Thus, the ALJ's decision that Plaintiff is not disabled at Step Four is proper, and there is no need for the Court to evaluate Step Five of the sequential evaluation process.

As a result of the foregoing discussion, the Court affirms the ALJ decision dated December 6, 2004.

It is so ordered this 28th day of March, 2007.

Sam A. Joyner
United States Magistrate Judge